And the court will proceed to the fourth case, Joel Joll v. Valparaiso Community Schools. May it please the court, opposing counsel, Jared Vesalauskas on behalf of the plaintiff, Ms. Molly Joll. Your honors, we're here for two matters today. First, to determine whether the district court properly applied the standard of review in a Title VII case. And second, to determine whether their granting of summary judgment in this matter was proper. When we look at the standard under Title VII, the 1991 amendment to the Civil Rights Act granted a plaintiff limited recovery if they can demonstrate that gender was a motivating factor in their employer's decision. Mr. Vesalauskas? Yes. The mixed motive amendments really, as I understand the law, come into play at the stage of jury instructions and strategy from both sides. I think it would be most helpful today if you would focus your attention on the evidence concerning the way Ms. Joll and the other candidates were treated in the process and the explanations given at various times by the school system for its decisions. Yes, absolutely. So throughout the process, Ms. Joll applied for two different assistant cross-country coaching positions in the same school district. She first applied for the girls' cross-country position, then she applied for the boys' cross-country position. In both instances, she was up against one male candidate. Both times, she faced different treatment through the interview process and then received different explanations for why she was not hired. Throughout this entire process, there were no females making any part of the decision on behalf of the school. When Ms. Joll first learned of the girls' assistant cross-country position opening, she had to enlist the help of her union delegates to even get granted an interview. The male candidate that was coaching in a different school system and had no ties to the district didn't need to get any help getting the interview. When Ms. Joll went into that interview for that coaching position, she was questioned more about her personal background and her commitments to her family than about her experience as a high school runner, a college runner, and a coach at three different levels. That's the middle school level, the high school level, and 10 years of experience coaching cross-country at Valparaiso University, a Division I NCAA university. And is it correct that the successful candidate, Mr. Arradondo, or there is at least evidence that he had similar kind of background in the sense that he had dropped out of an earlier coaching position for family reasons and was not asked about that? Correct, that is, that's what the evidence shows is that when he went into his interview, he was asked about his coaching philosophy and his position as a coach. None of these questions were ever asked to Ms. Joll, the only female applicant for that position. Afterwards, even though AD, or Athletic Director Hofer said that they are not going to look at references until a recommendation is being made to the board, AD Hofer chose to contact each of Ms. Joll's references. That included boys cross-country coach, Erin Craig, who said she would be phenomenal for the position, and another administrator from within the district, her principal, Mr. Polite. Mr. Polite, while giving a glowing reference, said that she had a dominant personality, which the Athletic Director admitted gave him pause and hesitation when considering whether to hire her. The record also shows that Coach Arradondo didn't have his references reviewed until after the recommendation was made. Could I ask you a quick question? Absolutely. At the Jefferson Middle School, does Ms. Joll, is she still coaching there? My understanding is she coaches track, but I don't believe she coaches cross-country. Does she coach both boys and girls? Yes. And was that true back at the time, several years ago when this happened? Yes, when she was coaching, she was coaching both boys and girls, so she had experience coaching both at all three levels. Okay, thank you. After the school chose to hire the male candidate that had no ties to the district previously, they explained that he had more recent high school coaching experience as the reason that they hired him and not Ms. Joll. Was there any reference to Mr. Arradondo having better rapport with the girls? There was no reference of that. What there is reference in the record, though, is that the former assistant girls cross-country coach worked at a local running shop with Mr. Arradondo so that the belief is he had knowledge of the position before it was ever posted. Next, the boys' assistant cross-country coach position became posted. At that point, Ms. Joll again faced one male candidate. And after going through the interview process again, when she was not selected, she was told that first, the other coach had a better rapport with the boys. Later, that explanation changed to he was already in the school district. This shows- He was in the building, right? Yeah, in the high school, excuse me. This shows pretext on its face because none of those criteria were established, documented, or provided to candidates at the time of application. And these explanations were not provided until after the school was trying to justify their reason for not hiring Ms. Joll. I mean, an employer is not prohibited from, in essence, coming up with new criteria to distinguish among qualified candidates, right? The fact that- I understood your case to be focused primarily on the inconsistency between the rationale for the girls' and the boys' decision and the shifting explanations rather than just the fact we relied on some criteria that weren't published. Correct, but the criteria changed throughout it. And the case law is clear that a employer cannot rely on criteria that were not published at the time that are developed retroactively as their explanation without there being an inference of pretext. And that was not the only inference of pretext in this case. Ms. Joll, as the only female applicant, did not have a chance to discuss her coaching philosophy, as I mentioned. And when she applied for the boys' cross-country position, the references of the male applicant were never checked because the athletic director said he was already within the school system. At this time, I'd like to reserve, unless there's any further questions, for rebuttal. That's fine. Thank you. Ms. Ballard. Good morning. May it please the Court, Counsel Jacqueline Piller on behalf of the Valparaiso Community School Corporation. Your Honors, we believe that Judge Martin got it right when he granted summary judgment in favor of Valparaiso Community Schools relative to Ms. Joll's claims of discrimination both as to gender and discrimination as to age relative to two hiring decisions. And because opposing counsel's initial argument was focused on what he perceives as the differences between those two interviews, I kind of want to jump to that for the Court's sake. First of all, I want to point out to the Court that, and I know we've pointed this out in our brief, that plaintiff didn't file a statement of genuine disputes. Plaintiff relied on inadmissible evidence at the district court level. She also continues to rely on inadmissible evidence before this Court. What's that? For example, counsel just testified that Ms. Joll had to get her union help to obtain an interview. She has no idea as to whether or not that interview would have been scheduled otherwise, whether or not another person had to also get union help, or whether she just simply asked her union for help and didn't even need it. It's purely based on speculation that the only reason she got this interview was because she had to get her union involved. The other thing is that Ms. Joll relies on notes from an EEOC investigator, handwritten notes from the underlying EEOC investigation, and cites those notes in her brief. So we just want to point out to the Court that when considering Ms. Joll's arguments and assertions as to facts in this matter, we don't believe that the record is full of admissible evidence on Ms. Joll's part. That being said, I file summary judgments routinely, and what we did in this case is we filed a statement of material facts that for all the admissible evidence goes to Ms. Joll's favor, because we know that obviously you have to construe the facts in the light most favorable to her. So when we look at those facts, and under the Ortiz case, which Ms. Joll hasn't even cited, right? We don't have indirect or direct evidence in this Court anymore. We just have what a reasonable fact finder looking at the totality of the circumstances find that Ms. Joll was discriminated against. Have you ever, in your experience, come across the phrase dominant personality as applied to a man in employment decisions? In employment decisions? Yes. I have not had that specifically referenced in an employment decision, and in my experience defending school corporations. That being said, there's no evidence that the reason why she wasn't hired was because of this dominant personality. And keep in mind, too- We know it gave the decision maker pause, right? It did. Okay. If you'll indulge a somewhat personal question here, is it relevant whether a coach in cross-country or track has running experience? For- My personal thoughts versus the- For the school system here. The school system said that it was more important to them. The two most important things to them were having experience teaching at a high school level. Teaching or coaching? I'm sorry, coaching at a high school level and being in the building, if possible. Well, those are different answers given for the two different jobs, right? Well, both of them had more recent high school coaching experience. And keep in mind, too, and I think this is important- Mr. Kersman, and I apologize if I'm saying his name wrong, but Mr. Kersman had been coaching at, I believe, the track and then also had been volunteering as a cross-country coach at the time at the high school. And when had the plaintiff last coached high school? 1995, Your Honor, based on the record. So both candidates that were chosen had been coaching high school cross-country or coaching high school sports since 2008 for Mr. Arredondo. And like I said, Mr. Kersman had been coaching high school track and volunteering as a cross-country coach at the high school. And I apologize, my notes don't specifically state when he started. But that being, so that was an important reason for both decisions. But another important difference that I think that plaintiff doesn't point out and I think matters is that for the first interview, it wasn't the athletic director. Normally the athletic director and the head coach are the ones that perform these interviews for assistant coaches, right? The athletic director was out on medical leave, so they had someone else substitute. The athletic director then is the one that comes back in and checks the references for the girls cross-country coach. So when you see in the briefs, they're talking about A.D. Hoffer, that's who we're talking about. A.D. Hoffer participated in the second decision though, in the boys cross-country coach, which interestingly enough, the head coach for the boys cross-country is someone that wrote her a reference for the girls cross-country position. And he still didn't pick her. So we've got a situation. Because Kersman had a better rapport with the boys? Kersman had a better rapport with the boys and Kersman had already been coaching at the high school level. So, why was rapport with the girls not relevant in the girls' job? Well, I think the rapport with the boys is a comment based on the fact that he was in the building. Sounds like, that he was in the building? He was in the- It sure sounds like code. We wanna have men coach the boys and women coach the girls. Well, keep in mind, Your Honor, respectfully, Judge Hamilton, that neither Arredondo nor Joel were in the building. So, as the girls' position, neither of them could have had a better rapport with the girls because neither of them worked with those high school girls. Except that one of them had coached many of the same athletes before, right? Perhaps in middle school. I mean, we would assume that, although that's not- Let me ask you about the interview process on the girls' job. Why was Mr. Arredondo not asked the questions that Ms. Joel was asked? Sure. So, Ms. Joel was a cross-country coach at the middle school. Effective, the last year she was a coach, I believe, was 12-13. In January of 13, she resigned her coach, her position as coaching, at the middle school for the 13-14 school year. And when she did that, and keep in mind, she did this at Valpo, right? So, she does this to the athletic director, they know what's going on. She gives two reasons. One, I don't have time to coach right now because I have my two girls and I'm going to their track meets and I'm trying to make time constraints. Number two, her other daughter was down at college and so she just didn't have the time to do that. So, when we fast forward a year and a half- And what was Arredondo's situation? Arredondo's situation was at a totally different school corporation. They didn't even know that he had resigned the coaching position because of family issues. This was just based on personal knowledge because she had resigned a position at the same school board. He had cited family reasons for his resignation from that. And she was asked about whether her husband was doing the parenting now. Is that right? Well, I don't- I think that that might be disputed on the record. Does that sound like a fair way to, and gender neutral way to go about making decisions in employment? Respectfully, Your Honor, I believe so. In light of the context that Ms. Joel had told them the year before, that I can't have my husband being the only one driving the kids back and forth. I can't have my husband be the only one attending these meets. So when she put that out there the year before, and then literally 18 months later applies for a job, I think it's fair for the employer to say, listen, you resigned from a position that you had with us because you had these time constraints and concerns. What's changed now? Did they ask Arredondo similar questions about his time availability and family obligations? He hadn't resigned from a similar position from the same school corporation. They didn't have that background knowledge. The questions that they asked. Did they ask questions about availability? They did ask questions about availability, I believe. That's contained in the record. But specific as to whether or not she could parent, and I think that's disputed, but for purposes of summary judgment, let's assume it's true, they asked those questions based on the background information they had regarding her, and why she had resigned from her position the year before. And so that's not a gender or age specific reason. That's a reason based on the relationship that they had with her because she was a longstanding employee. And so when Valparaiso Community School says, we want a coach with more recent high school coaching experience, the record's undisputed that these two both did. That's a gender neutral reason. That's an age neutral reason. There's no evidence before this court that anyone at Valparaiso Community Schools thought that reason was dishonest, that they didn't actually believe that reason, or that they didn't think it was a good qualification. And that's what pretext is, right? It's not second guessing the employer's decision. It's saying in the grand scheme of things, did they believe this decision was the right one to make? And your honors, there's no evidence before you that Valparaiso didn't believe the decision for not hiring Ms. Joel. She stays on as a teacher. In fact, she coaches at the middle school level now. This isn't a situation where Valpo was trying to hide some sort of discriminatory actions. And quite frankly, this whole case turns on pretext. That's what plaintiffs has now been kind of pounding the table on on appeal. And there's no evidence that anyone at Valpo harbored any sort of discriminatory animus or thought that what they were doing was dishonest. No, you don't have direct evidence of animus here. What you've got are some circumstantial indications of differential treatment of different candidates. Your honor, if I may respond, I see my time's up. Sure, sure. Respectfully, I think if you take a good look at the record, one, some of those circumstantial treatments, or I'm sorry, some of that differing treatment is not based on admissible evidence. It's based on Ms. Joel's speculation. And in fact, she said when she was testified in her deposition, when asked why she thought she was discriminated against because of her gender, she said two things. None of them having anything to do with the pretext things we're talking about today. She was discriminated against on the basis of her gender because nobody that interviewed her was a female and because the people that were hired were male. That's simply not enough to satisfy that. So no, you're entitled to ask that question in depositions. And you also know that plaintiffs often don't have complete information at that point and are not in the best position to be able to structure their own case in response to your questions, right? Sure, sure. Well, I'm not going to take much weight from her answers to that question. Sure, and Your Honor, if I may, the context of dominant personality was put in the context of if she was an assistant coach. Like, in other words, and you'll see in the record, the athletic director. This was coming from somebody whose assistant coach she was? No, it was actually coming from her principal at the middle school. Okay, okay. And you'll see in the record, the athletic director states that the reason that that gave him pause is because it made him think that she wouldn't be able to follow direction of someone else being head honcho. But the head coach she had worked under was Craig, right? Who gave her rave reviews, right? I don't actually know if she had worked under him, but he had worked with her. I think he had actually, she had been one of his coaches back in the day, because he's, I think, substantially younger, which... That's another issue. Right, that's another issue. But he also didn't recommend her hiring for the boys' position, so. But did for the girls' position? He provided her with a recommendation, but did not participate in the decision. All right, thank you, Your Honor. As we sit here today, counsel gave us two criteria that she said the school corporation relied upon. But the facts were not that. They were one criteria for the girls' position, and then different criteria for the boys' position. And both of those criteria were the pretext that was meant to exclude Ms. Jahl from having a fair shot at this position. Counsel came up here during her own argument and tried to justify every decision that the school corporation made, and every explanation she gave to these panel's questions, and to what we raised in our brief, demonstrated pretext more and more and more. Ms. Jahl faced two younger male candidates for two separate coaching positions. Both of those positions were decided by all males. And in both of those positions, she was given different treatment and different justifications. Both times, Ms. Jahl did not get the job. Yes, she remains employed in the school corporation, but she has not been able to coach in the school corporation because of their discrimination. When we look at the case and the controlling precedent, what we have to consider here today is whether there are enough issues that summary judgment was improper and this case should have proceeded forward. Everything that has been discussed today are genuine issues of material fact and issues that should have been put to a jury to sort out. Counsel came up here and talked about Ortiz briefly. What it's important to consider in Ortiz is that case had less evidence of discrimination than we're talking about today,  and allowed to go to a jury. Another case that was discussed in the briefs and counsel relied upon in their brief was Millbrook. And in Millbrook, they said, qualifications alone are not enough. Well, here we have qualifications plus all circumstantial evidence of pretext and circumstantial evidence of discrimination. For those reasons, we ask that this court remand this case, reverse the summary judgment, and allow the matter to proceed to trial. Thank you. Thanks to all counsel. The case is taken under advisement.